**Edith Scurlock CRAIG, et al., Plaintiffs-Appellees,**

v.

**Kenneth A. TURNER, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 2, 1981.

Permission to Appeal Denied by Supreme Court Feb. 1, 1982.

Abridged Opinion March 1, 1982.

Charles N. Griffith, Waverly, for plaintiffs-appellees.

Jeff A. Crow, Jr., H. Ray Beliles, Henry M. Beaty, Jr., Memphis, Tenn., for defendant-appellant.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

The defendant-counter plaintiff, Kenneth A. Turner, has appealed from the Chancellor's decree removing certain recorded instruments as clouds upon plaintiffs' title to a tract of 109½ acres, denying the claim of defendant to 21.9 acres of the tract and dismissing his counter-complaint.

Appellant presents a single issue for review as follows:

The sole issue presented for review is ownership of 21.9 acres of land in Humphreys County, Tennessee, which the Chancellor below decreed to be owned by appellees and which appellant claims.

The following facts are undisputed:

In 1809, John Gwin acquired the 109½ acre tract by grant. Upon his death intestate, the tract passed to his five children in equal shares of ⅕ each. One son, W. C. Gwin subsequently died intestate, owning his ⅕ share and survived by a widow and

children. There is no record of any assignment of dower to the widow, Alice Gwin, who, on June 13, 1908, conveyed by recorded warranty deed "my one fifth undivided interest in and to" the subject 109½ acres.

Plaintiffs are the unquestioned owners of ⅘ inherited by the other children of John Gwin and claim the remaining ⅕ interest of W. C. Gwin through the widow's conveyance, above.

The defendant, Kenneth A. Turner, claims 21.9 acres of the 109½ acres by conveyances of the W. C. Gwin ⅕ interest from the children of W. C. Gwin and alleges an oral partition converting the ⅕ interest in the 109½ acres into a 100% interest in 21.9 acres of the tract.

Thus, the crucial question is whether the plaintiffs have absolute title to the 21.9 acres through the deeds from the heirs of John Gwin and the widow of W. C. Gwin and/or adverse possession; or the defendant has title through the heirs of W. C. Gwin. The counter claim of the defendant will be discussed first.

■ Under the law in effect at the time of the death of W. C. Gwin, his ⅕ interest passed to his children subject to the claim of his widow, Alice Gwin, which was limited to a life estate in dower *when assigned.* Dower was never assigned, hence the widow had only an inchoate right and not an estate in the property of her deceased husband. *Springfield v. Stamper,* 31 Tenn. App. 252, 214 S.W.2d 345. After her death and the termination of the inchoate right, the children of W. C. Gwin were the absolute owners by inheritance of their father's ⅕ interest in the 109½ acres. If such ownership has not been vacated by intervening adverse possession or conveyed by deed, the children of W. C. Gwin remain the owners of a ⅕ undivided interest in the 109½ acre tract.

■ The deeds from the heirs of W. C. Gwin to appellant do not purport to convey their ⅕ undivided interest in the 109½ acres, but undertake to convey a surveyed and described tract of 21.9 acres which is part of the 109½ acres. Appellant's explanation for this is an unproved allegation that there was an oral partition between his predecessors and plaintiff's predecessors whereby appellant's predecessors acquired fee simple title to the 21.9 acres in exchange for their release of their rights in the remainder of the 109½ acre tract. The only evidence offered to prove such alleged transaction consists of unauthenticated copies of two letters exchanged by attorneys, neither of whom is shown to be authorized to act for any party to the matters discussed in the letters. The Chancellor properly refused to consider said letters which are not qualified for consideration by this Court.

The conveyances of the W. C. Gwin heirs purport to transfer to appellant their interest in the 21.9 acres described in the deeds, but the deeds do not purport to transfer any interest in the remainder of the 109.5 acre tract. It may therefore be argued that appellant has shown himself to be the record owner of an interest in 21.9 acres subject to the claim of plaintiffs by adverse possession.

The defendant-appellant has asserted no claim to that part of the 109.5 acres which lies outside of the 21.9 acres. The original object of this suit was to remove the claims of defendant to the 21.9 acres as a cloud upon plaintiffs' title to the entire 109½ acres. Accordingly, the evidence of adverse possession has centered upon the 21.9 acre tract claimed by defendant.

■ As above stated, plaintiffs' claim to the W. C. Gwin ⅕ interest in the 109½ acres (ergo. the same claim in regard to the 21.9 acre *part* of the whole 109½) is based upon the 1908 deed of Alice Gwin, widow of W. C. Gwin. Appellant correctly insists that the widow had no power as widow to convey the interests of the W. C. Gwin heirs. *However,* this insistence is not determinative because plaintiffs do not claim *perfect title* by virtue of the widow's deed. They claim only *color of title* for purposes of adverse possession under T.C.A. § 28–2–101, 102, 105, 106, as follows:

*28–2–101. Adverse possession—State conveyance.*—(a) Any person having had,

by himself or those through whom he claims, seven (7) years' adverse possession of any lands, tenements, or hereditaments, granted by this state or the state of North Carolina, holding by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted against him, is vested with a good and indefeasible title in fee to the land described in his assurance of title.

(b) No title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title shall have been recorded in the register's office for the county or counties in which the land lies during the full term of said seven (7) years' adverse possession.

*28–2–102. Action barred after seven years.*—On the other hand, any person, and those claiming under him neglecting for the said term of seven (7) years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, under recorded assurance of title, as in § 28–2–101, are forever barred.

*28–2–105. Adverse possession—Assurance of title.*—Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom he claims having been in adverse possession of same for seven (7) years, where said real estate is held and claimed by him or those through whom he claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein.

*28–2–106. Possession against persons under disability.*—Where such land or interest therein is held as set out in § 28–2–105, no person, whether upon disability or not, nor the state of Tennessee, shall commence or sustain an action for the recovery of same in any court.

█ It was not necessary for the widow of W. C. Gwin to have a right to convey in order to execute an "assurance of title" under the above statutes. One may be in possession under color of title even though the writing claimed as such is wholly void. *Wallace v. McPherson,* 187 Tenn. 333, 214 S.W.2d 50 (1947). Moreover, the mere fact that the widow had no widow's right to convey is not conclusive that she had no other right to convey. In any event, the widow had no less power to create a *color of title* than a rank stranger who could, by executing a completely groundless conveyance, create a *color of title* in the conveyee.

The deed of Alice Gwin contains all of the usual assurances of title, hence it conforms to the statutory requirement for an "assurance of title."

The next inquiry is whether or not plaintiffs proved seven years adverse possession by themselves and/or their predecessors. As already indicated, the inquiry is limited to the 21.9 acres claimed by defendant-appellant. The 21.9 acres was surveyed for the purpose of preparing the deeds to appellant, and the 21.9 acres was outlined in red on a tax assessor's map shown to each of the witnesses. Although not as clear and specific as might be desired, the testimony in sum total is such as to establish a credible and sufficient adverse possession by plaintiffs and their predecessors.

█ In the first place, the fact that the deed of Alice Gwin has been on record since 1908 and there is no evidence of occupation by anyone except plaintiffs and their predecessors creates an atmosphere for liberal inferences from the evidence.

The most persuasive testimony consists of the following:

R. B. Nichols testified that he knew Earl Scurlock thirty (30) years until 1940 when he died; that he owned an adjoining farm until 1960 and lived there until 1957; and that Earl Scurlock used or rented out the 21.9 acres.

Mack Kemby, Sr. testified that he lives on land adjoining the Earl Scurlock farm; that he knew Earl Scurlock; worked corn for him; that he rented part of the 21.9 acres from Earl four or five years; that he sold hay off the land in the sixties; that he worked for Earl in 1932 or 1933; that Earl Scurlock had a fence around the farm that stayed there twenty-five or thirty years; and that Earl used the 21.9 acres "off and on."

Edith Scurlock Craig testified she was born in 1936; that she was the daughter of Earl Scurlock; that Earl used the 21.9 acres for row crops or pasture; and that his children have so used it since his death.

Mary Scurlock Rollins testified that her husband has farmed the 21.9 acres for the last four or five years.

The Chancellor was justified in concluding that plaintiffs and their predecessors had completed a period of seven years adverse possession sufficient to satisfy the statute.

Under T.C.A. § 28–205, quoted above, there can be no question about rights of persons under disability because the "assurance of title" was on record more than thirty years.

■ Authorities cited as to the deferral of adverse possession until the "falling in" of a life estate are inapplicable because there never was a life estate to "fall in." The inchoate right to dower was never converted into an estate of any kind. Therefore, there was no "life estate" to prevent an effective adverse possession by plaintiffs.

It is argued that plaintiffs' predecessors could not hold adversely to joint tenants in common (the heirs of W. C. Gwin and predecessors of defendant). However, the same result could and did occur by ouster. The evidence is sufficient to show an oust-

er. See Authorities in annotation no. 56 under T.C.A. § 28–2–101. The recording of the 1908 deed and the subsequent exclusive use of the lands and profits therefrom constituted an ouster of the W. C. Gwin heirs.

The decree of the Chancellor is affirmed.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.